

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

JAMES THOMAS TURNER, Individually and : Civil Action No. **11 CIV 1918**
on Behalf of All Others Similarly Situated,

                             CLASS ACTION

                Plaintiff, :

                             : COMPLAINT FOR VIOLATION OF THE
     vs. : FEDERAL SECURITIES LAWS

SHENGDATECH, INC., XIANGZHI CHEN, :
ANDREW WEIWEN CHEN, and ANHUI
GUO, :

               Defendants. :

---------------------------------------------------------x

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by ShengdaTech, Inc. ("ShengdaTech" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of ShengdaTech between March 15, 2010 and March 15, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff James Thomas Turner, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of ShengdaTech during the Class Period and has been damaged thereby.

7.      Defendant ShengdaTech is a Nevada corporation that is headquartered in Shanghai, China. The Company and its subsidiaries are primarily engaged in developing, manufacturing and marketing nano precipitated calcium carbonate ("NPCC") products.

8.      Defendant Xiangzhi Chen ("Xiangzhi Chen") is, and was at all relevant times, Chairman of the Company's Board of Directors and Chief Executive Officer of ShengdaTech.

9.      Defendant Andrew Weiwen Chen ("Andrew Chen") served as the Company's Chief Financial Officer ("CFO") until September 30, 2010 when he resigned from such position for personal reasons.

10.     Defendant Anhui Guo ("Guo") is, and was at all relevant times, a Director and Chief Operating Officer ("COO") at ShengdaTech.  On September 30, 2010, the Company's Board of Directors appointed Defendant Guo as acting CFO.

11.     Defendants Xiangzhi Chen, Andrew Chen and Guo are collectively referred to herein as the "Individual Defendants."

12.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of ShengdaTech, were privy to confidential and proprietary information concerning ShengdaTech, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning ShengdaTech, as discussed in detail below.  Because of their positions with ShengdaTech, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations

- 2 -

and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

13.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of ShengdaTech's business.

14.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

15.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NASDAQ Global Select Market of the NASDAQ Stock Market ("NASDAQ") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to ShengdaTech's financial

condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of ShengdaTech's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

16.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of ShengdaTech's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding ShengdaTech's financial reporting, business, operations and management and the intrinsic value of ShengdaTech's common stock; and (ii) caused Plaintiff and members of the Class to purchase ShengdaTech common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of ShengdaTech between March 15, 2010 and March 15, 2011, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

18.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ShengdaTech's common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and

can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by ShengdaTech or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

19.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

20.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

21.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of ShengdaTech;

(c)     whether the price of ShengdaTech common stock was artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

22.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

23.     Defendant ShengdaTech and its subsidiaries are primarily engaged in developing, manufacturing and marketing so-called NPCC products, which, due to their special chemical and physical attributes, are used as functional additives in various products, including paper, paints, rubber and plastic.  The Company purports to use advanced processing technologies to convert limestone into high quality NPCC products, which are sold to customers in the tire, polyvinyl chloride building materials, ink, paint, latex, adhesive, paper and polyethylene industries.

24.     The Class Period begins on March 15, 2010.  On that date, ShengdaTech filed with the SEC its Form 10-K for the year ended December 31, 2009 (the "2009 Form 10-K"), which was signed by Defendants Xiangzhi Chen and Guo, and included the following representations about the Company's disclosure and internal controls and Defendant Xiangzhi Chen's and Andrew Chen's certifications thereon:

(a)     Disclosure Controls and Procedures.

Disclosure controls and procedures (as defined in Rules 13a – 15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the Exchange Act")) are designed to ensure that information required to be disclosed in our reports filed under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms. This information is accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosures.  Our management, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this report. Based on the evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of December 31, 2009.

(b)     Management's report on internal control over financial reporting.

Internal control over financial reporting (as defined in Rules 13a - 15(f) and 15d-15(f) under the Exchange Act) is a process that is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles, and includes those policies and procedures that:

• Pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of assets of the Company,

• Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures are being made only in accordance with authorizations of management and the board of directors of the Company, and

• Provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the Company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies and procedures may deteriorate.

Based on our evaluation of internal control over financial reporting as of December 31, 2009, management has determined that our internal control over financial reporting was effective. We acquired Chaodong in December 2009, and management excluded from its assessment of the effectiveness of our internal control over financial reporting as of December 31, 2009. Chaodong's internal control over financial reporting associated with total assets of $4,593,970 and nil revenue, which was included in the consolidated financial statements of the Company. We also did not assess the effectiveness of the internal control over financial reporting of Chaodong. The Company's evaluation of the effectiveness of our internal control over financial reporting is based on the criteria established in COSO's Internal Control - Integrated Framework.

Our independent registered public accounting firm, KPMG has audited the effectiveness of the Company's internal control over financial reporting as of December 31, 2009, as stated in their report, which appears below.

(c)      Changes in internal control over financial reporting.

As previously reported under "Item 4 - Controls and Procedures" in our quarterly report on Form 10-Q for the quarter ended September 30, 2009, management concluded that our internal control over financial reporting was not effective based on the material weaknesses identified in the Company's internal control over financial reporting described in the Company's Annual Report on Form 10-K for the

fiscal year ended December 31, 2008. Management has continued to work on remediation efforts since the filing of that report.

During the quarter ended December 31, 2009, changes in our internal control over financial reporting occurred related to the two previously reported material weaknesses as follows:

•       Management had concluded that for non-routine transactions and related disclosures, we did not maintain adequate policies and procedures and lacked personnel possessing adequate technical accounting expertise to ensure that those transactions are properly accounted for and disclosed in our consolidated financial statements. As of December 31, 2009, management has concluded that the severity of this previously reported material weakness has been sufficiently reduced and remediated such that the previously reported material weakness is no longer a material weakness. We have designed adequate policies and procedures and hired and trained enough technically-qualified personnel to properly account for and disclose non-routine transactions. In addition, as part of the 2009 period-end financial closing process, management utilized a monthly monitoring process. Based on these reviews, which are part of the control process, non-routine transactions and related disclosure controls are deemed to be operating effectively.

•       Management had concluded that we did not design and maintain effective policies and procedures to ensure adequate maintenance of tax records, timely reconciliation of income tax accounts and adequate analysis and review of deferred tax calculations. As a result, we did not maintain effective internal control over the accounting for income taxes and related financial statement disclosures. As of December 31, 2009, management has concluded that the severity of this previously reported material weakness has been sufficiently reduced and remediated such that the previously reported material weakness is no longer a material weakness. We have designed policies and procedures to ensure the maintenance of tax records, timely reconciliation of income tax accounts and adequate analysis and review of deferred tax calculations and hired qualified third party specialists to perform these procedures. In addition, as part of the 2009 period-end financial closing procedures, management utilized a monthly monitoring process. Based on these reviews, which are part of the control process, tax records, timely reconciliation of income tax accounts and adequate analysis and review of deferred tax calculations and related disclosure controls are deemed to be operating effectively.

*       *       *

I, [Defendant Xiangzhi Chen and Andrew Chen], certify that:

1.       I have reviewed this annual report on Form 10-K of ShengdaTech, Inc. (the "registrant");

2.       Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made,

in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3       Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

      a.      Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

      b.      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

      c.      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

      d.      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrants' most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

      a.      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b.      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

25.      The above representations and certifications were repeated in all material respects in the Forms 10-Q that ShengdaTech filed with the SEC during the remainder of the Class Period.

26.      On March 16, 2010, ShengdaTech issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2009.  Such press release included the following representations about the Company's 2010 outlook:

ShengdaTech expects to complete repairs and maintenances, as well as equipment and technological upgrades at its recently acquired NPCC facility in Chaodong, Anhui Province, and start production in April 2010. Once completed, as a first phase, the facility will have a planned annual capacity of 10,000 metric tons.

By 2013, as demand dictates, ShengdaTech plans to expand the Chaodong Facility incrementally with an additional 200,000 MT of production capacity in several phases with a total investment commitment of approximately $175.7 million.

In addition, as reported, the production building currently housing Phase I of the new NPCC facility in Zibo was constructed to allow for an additional 40,000 MT of capacity.  ShengdaTech plans to purchase equipment to bring the additional 40,000 MT of designed capacity online in October 2010.

The total planned annual NPCC production capacity for 2010 is expected to reach approximately 300,000 MT by year end with the addition of the new lines in Zibo and the 10,000 MT of production facility in Chaodong, Anhui Province. This will be an increase of 20% compared to the 250,000 MT of capacity reached at the end of 2009.

The Company expects 2010 revenue and net income from NPCC to be in the range of $123.0 million to $126.0 million and $25.0 million to $27.0 million, respectively.

Defendant Xiangzhi Chen commented on the Company's 2010 outlook, stating, in pertinent part:

Our management team remains steadfastly committed to increasing ShengdaTech's market penetration and to expanding its global reach.  Our business strategy in 2010 is to stay highly focused on identified keys to our success - capacity expansion, new product development, and wider and deeper geographic coverage.  In 2010, we plan to start laying the groundwork to capitalize on the enormous market opportunity and long-term potential now available in the untapped, prospect-rich Yangtze River Delta economic region through our recently acquired NPCC facility in Anhui Province. We also expect to launch new breakthrough NPCC products in a range of new

- 10 -

applications, including the high potential asphalt market, which is expected to achieve long-awaited approval from our five testing and fully engaged potential large-volume customers. Upon approvals, we anticipate beginning to ship increasing volumes of NPCC going forward. We will sustain our leading competitive edge as we continue to prove our value proposition with every satisfied customers. We also continue to evaluate growth opportunities in the technology-driven chemical market that will help us leverage our management expertise and offer attractive margins for future growth and profitability. With the improvement in the global economy positively influencing manufacturing spending, we are increasingly confident of achieving our fiscal 2010 goals and continuing to create long-term shareholder value.

27. Following the Company's 2009 fourth quarter and year end earnings announcement, Defendants held a conference call with analysts and investors, wherein Defendants made positive statements about the Company and its prospects, including, but not limited to, its revenues, income, growth drivers and operations.

28. On May 10, 2010, ShengdaTech filed with the SEC its Form 10-Q for the quarter ended March 31, 2010 (the "March 2010 Form 10-Q"), which was signed by Defendants Xiangzhi Chen and Andrew Chen and disclosed:

The accompanying interim condensed consolidated financial statements of the Company include ShengdaTech and its wholly owned subsidiaries. The financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("US GAAP") for interim financial information and the instructions to Form 10-Q and Article 10 of Regulation S-X of the Securities and Exchange Commission. In the opinion of the Company's management, the interim condensed consolidated financial information provided herein reflects all adjustments (consisting of normal and recurring adjustments) necessary for a fair presentation of the Company's consolidated financial position as of March 31, 2010, the results of its operations for the three months ended March 31, 2010 and 2009, and its cash flows for the three months ended March 31, 2010 and 2009.

29. In addition, the March 2010 Form 10-Q included representations about the Company's disclosure and internal controls and Defendant Xiangzhi Chen's and Andrew Chen's certifications thereon.

30. On May 11, 2010, ShengdaTech issued a press release announcing its financial results for the 2010 first quarter, the period ended March 31, 2010. For the quarter, the Company reported

revenue from continuing operations of $30.2 million, a 46.2% increase over the prior year period, and net income from continuing operations of $6.7 million, or $0.12 per diluted share. Defendant Xiangzhi Chen commented on the Company's first quarter results, stating, in pertinent part:

> We are delighted to report another strong record-breaking quarter for our NPCC business evidenced by robust top-line growth coupled with improved margins. Our investments in R&D and end-market development continue to bear fruit, as we shift our product mix to more value-added NPCC applications to meet the rising demand from high-end-product markets, where we can justify greater pricing flexibility and realize sustainable growth potential.
>
> As a nano-technology leader in the specialty chemical sector in China, we remain proactive in new-product development and in expanding our application base. Our engineers work closely with our customers to design solutions for them to enhance their product functionalities and reliabilities and to lower their costs as well. This is the value proposition that has successfully set us apart from other product offerings in this space. By extending our record of complete customer satisfaction into many more manufacturing sectors, we expect rapidly growing opportunities in our addressable markets for NPCC.

31.     Following the 2010 first quarter announcement, Defendants held a conference call with analysts and investors, wherein Defendants made positive statements about the Company and its prospects, including, but not limited to, its revenues, expenses, income, margins, markets, growth, orders, average selling prices, and customers.

32.     On June 15, 2010, ShengdaTech filed with the SEC a Form S-3 registration statement (the "Registration Statement") to register $150,000,000 of ShengdaTech's common stock, debt securities, warrants and units.

33.     On July 29, 2010, ShengdaTech filed with the SEC Amendment No. 1 to the Registration Statement and amendments the Company's 2009 Form 10-K and the Company's March 2010 Form 10-Q in response to comments received by the Company from the SEC in a letter dated July 9, 2010.

34.     On August 9, 2010, ShengdaTech filed with the SEC its Form 10-Q for the quarter ended June 30, 2010 (the "June 2010 Form 10-Q"), which was signed by Defendants Xiangzhi Chen and Andrew Chen and disclosed:

> The accompanying interim condensed consolidated financial statements of the Company include ShengdaTech and its wholly owned subsidiaries. The financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("US GAAP") for interim financial information and the instructions to Form 10-Q and Article 10 of Regulation S-X of the Securities and Exchange Commission. In the opinion of the Company's management, the interim condensed consolidated financial information provided herein reflects all adjustments (consisting of normal and recurring adjustments) necessary for a fair presentation of the Company's consolidated financial position as of June 30, 2010, the results of its operations for the three and six months ended June 30, 2010 and 2009, and its cash flows for the six months ended June 30, 2010 and 2009.

35.     In addition, the June 2010 Form 10-Q included representations about the Company's disclosure and internal controls and Defendant Xiangzhi Chen's and Andrew Chen's certifications thereon.

36.     On August 10, 2010, ShengdaTech issued a press release announcing its financial results for the 2010 second quarter, the period ended June 30, 2010. For the quarter, the Company reported revenue from continuing operations of $33.2 million, a 28% increase over the prior year period, and net income from continuing operations of $7.1 million, or $0.13 per diluted share. Defendant Xiangzhi Chen commented on the Company's first quarter results, stating, in pertinent part:

> Our growth continued in the second quarter of 2010 as our enhanced R&D efforts have created much higher value-added products, which are generating robust sales. Our solid financial performance also comes from the economies-of-scale contributed by our increases in production capacity. We will continue to target the high-end markets and industries ideal for our nano-technology applications.
>
> We believe that with our increased production capacity and on-going acquisition of limestone mining rights, along with our strong R&D support, we are well-positioned to achieve high gross margins. We remain confident in the industry's growth prospects and we are well positioned to sustain our demonstrated leadership and record of success in this sector.

37.    Following the 2010 second quarter announcement, Defendants held a conference call with analysts and investors, wherein Defendants made positive statements about the Company and its prospects, including, but not limited to, its revenues, expenses, income, margins, markets, growth, average selling prices, and customers.

38.    On September 15, 2010, ShengdaTech filed with the SEC amendments the Company's 2009 Form 10-K and the Company's March 2010 Form 10-Q in response to comments received by the Company from the SEC in a letter dated August 11, 2010.

39.    On October 1, 2010, ShengdaTech filed a Form 8-K with the SEC disclosing that on September 30, 2010, Defendant Andrew Chen resigned as the Company's CFO "for personal reasons" and that the Company's Board of Directors appointed Defendant Guo, COO, to serve as acting CFO until such time that ShengdaTech hired a new CFO.

40.    On October 20, 2010, ShengdaTech filed with the SEC Amendment No. 2 to the Registration Statement

41.    On November 8, 2010, ShengdaTech filed with the SEC its Form 10-Q for the quarter ended September 30, 2010, (the "September 2010 Form 10-Q"), which was signed by Defendants Xiangzhi Chen and Guo and disclosed:

> The accompanying interim condensed consolidated financial statements of the Company include ShengdaTech and its wholly owned subsidiaries. The financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("US GAAP") for interim financial information and the instructions to Form 10-Q and Article 10 of Regulation S-X of the Securities and Exchange Commission. In the opinion of the Company's management, the interim condensed consolidated financial information provided herein reflects all adjustments (consisting of normal and recurring adjustments) necessary for a fair presentation of the Company's consolidated financial position as of September 30, 2010, the results of its operations for the three and nine months ended September 30, 2010 and 2009, and its cash flows for the nine months ended September 30, 2010 and 2009.

42.     In addition, the September 2010 Form 10-Q included representations about the Company's disclosure and internal controls and Defendant Xiangzhi Chen's and Guo's certifications thereon.

43.     Also on November 8, 2010, ShengdaTech issued a press release announcing its financial results for the 2010 third quarter, the period ended September 30, 2010.  For the quarter, the Company reported revenue from continuing operations of $34.4 million, a 36% increase over the prior year period, and net income from continuing operations of $7.0 million, or $0.13 per diluted share.  Defendant Xiangzhi Chen commented on the Company's first quarter results, stating, in pertinent part:

> Our strong revenue and net income growth in the third quarter of 2010 was led by continued capacity expansion fueled by growth in customer demand.  Demand for our NPCC products continues to rise as we further penetrate our existing end-markets and expand into new markets.  We are aggressively ramping up capacity utilization at our new NPCC facility in Anhui Province and are in advanced negotiations with prospective customers in this high-potential, prospect-rich economic region.
>
> One of our leading competitive advantages in the NPCC market is our ability to introduce new, value-added product applications for NPCC.  For example, in the third quarter of 2010, we recognized our first sales of our new NPCC application for asphalt and expect orders to accelerate in the coming months.  We plan to patent protect this application to capitalize on this market opportunity and reap maximum benefits from our intensive and extensive research efforts.

44.     Following the 2010 third quarter announcement, Defendants held a conference call with analysts and investors, wherein Defendants made positive statements about the Company and its prospects, including, but not limited to, its revenues, expenses, income, margins, markets, growth, average selling prices, and customers.

45.     That same day, November 8, 2010, ShengdaTech filed with the SEC Amendment No. 3 to the Registration Statement.

46.     On November 18, 2010 ShengdaTech filed with the SEC Amendment No. 4 to the Registration Statement.

- 15 -

47.     On November 23, 2010 ShengdaTech filed with the SEC Amendment No. 5 to the Registration Statement.

48.     On December 9, 2010, ShengdaTech issued a press release announcing plans to offer an aggregate of $90 million of senior convertible notes due 2015 in a private offering.   The Company also announced that it intended to grant the initial note purchasers an option to purchase an additional $30 million of such notes.

49.     On December 10, 2010, ShengdaTech announced that it entered into a purchase agreement with Morgan Stanley & Co. relating to the sale by the Company of $130 million aggregate principal amount of the Company's 6.50% Senior Convertible Notes due 2015 (the "Notes"), in a private offering (the "Note Offering") to "qualified institutional buyers" as defined in Rule 144A under the Securities Act of 1933.   ShengdaTech also announced its intention to use the net proceeds from the Note Offering to repurchase $67 million of the Company's 6.0% Convertible Senior Notes due 2018 and to finance its NPCC production capacity expansion, research and development activities and other working capital requirements.

50.     On December 15, 2010, the Company announced that issued $130 million aggregate principal amount of the Notes in the Note Offering.

51.     The statements referenced above in ¶¶24-31, 34-38 and 41-44 were each materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a)     that ShengdaTech was operating with material deficiencies in the system of internal control over its financial reporting;

(b)     that ShengdaTech's financial statements, during at least 2010, were not fairly presented in conformity with U.S. GAAP and were materially false and misleading; and

- 16 -

(c)     that based on the foregoing, Defendants lacked a reasonable basis for their positive statements about ShengdaTech's revenues, expenses, income, margins, markets, growth, average selling prices, and customers.

52.     Then, on March 15, 2011, the Company issued a press release announcing that it had appointed a special committee of the Board of Directors to investigate "potentially serious discrepancies and unexplained issues relating to the Company and its subsidiaries' financial records identified by the Company's auditors" in the course of their examination of ShengdaTech's consolidated financial statements for the year ended December 31, 2010.

53.     The Company further announced that: (i) the Company's audit committee retained O'Melveny & Myers LLP as independent outside counsel, which had initiated an internal investigation, (ii) the SEC had been notified about the commencement of the internal investigation, and, (iii) the Company would not file its 2010 Form 10-K in a timely manner.

54.     In response to this unexpected announcement, trading in the Company's shares was suspended.

55.     The market for ShengdaTech common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, ShengdaTech common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired ShengdaTech common stock relying upon the integrity of the market price of ShengdaTech common stock and market information relating to ShengdaTech, and have been damaged thereby.

56.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of ShengdaTech common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set

forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

57.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about ShengdaTech's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of ShengdaTech and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

58.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding ShengdaTech, their control over, and/or receipt and/or modification of ShengdaTech's allegedly materially misleading misstatements and/or their

associations with the Company, which made them privy to confidential proprietary information concerning ShengdaTech, participated in the fraudulent scheme alleged herein.

59.    Defendants were further motivated to engage in a fraudulent course of conduct in order to allow the Company to sell convertible securities in the Note Offering to unsuspecting investors at artificially inflated prices.

## Loss Causation/Economic Loss

60.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of ShengdaTech common stock and operated as a fraud or deceit on Class Period purchasers of ShengdaTech common stock by failing to disclose and misrepresenting the adverse facts detailed herein.  When Defendants' prior misrepresentations and fraudulent conduct were leaked to the market, the price of ShengdaTech's common stock fell as a portion of the prior artificial inflation came out.  During the final five trading days of the Class Period, ShengdaTech's common stock fell more than 12%, closing at $3.55 on March 14, 2010, the day before trading in the Company's shares was suspended.  As a result of their purchases of ShengdaTech common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

61.    By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of ShengdaTech's business and prospects.  Defendants' false and misleading statements had the intended effect and caused ShengdaTech common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $7.55 per share on April 7, 2010.

62.    As a direct result of Defendants' prior misrepresentations and fraudulent conduct being leaked to the market, the price of ShengdaTech common stock fell over 12% during the final five trading days of the Class Period and trading in the Company's shares was suspended.  The

economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of ShengdaTech common stock.

## Applicability of Presumption of Reliance:
## Fraud on the Market Doctrine

63.     At all relevant times, the market for ShengdaTech common stock was an efficient market for the following reasons, among others:

(a)     ShengdaTech common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b)     as a regulated issuer, ShengdaTech filed periodic public reports with the SEC and the NASDAQ;

(c)     ShengdaTech regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     ShengdaTech was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

64.     As a result of the foregoing, the market for ShengdaTech common stock promptly digested current information regarding ShengdaTech from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of ShengdaTech common stock during the Class Period suffered similar injury through their purchase of ShengdaTech common stock at artificially inflated prices and a presumption of reliance applies.

## No Safe Harbor

65.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of ShengdaTech who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not

misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

69.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ShengdaTech common stock.  Plaintiff and the Class would not have purchased ShengdaTech common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of ShengdaTech common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

71.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of ShengdaTech within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of ShengdaTech, and their ownership of ShengdaTech stock, the Individual Defendants had the power and authority to cause ShengdaTech to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  March 18, 2011                    ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                          SAMUEL H. RUDMAN


                                          _____
                                                  SAMUEL H. RUDMAN

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone: 631/367-7100
                                          631/367-1173 (fax)

MICHAEL I. FISTEL, JR.
MARSHALL DEES
HOLZER, HOLZER & FISTEL, LLC
200 Ashford Center North, Suite 300
Atlanta, Georgia 30338
Telephone:  770/392-0090
770/392-0029 (fax)

DYER & BERENS, LLP
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, Colorado 80203
Telephone: 303/861-1764
303/395-0393 (fax)

Attorneys for Plaintiff

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the complaint and authorized its filing.

2.     Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.     Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| SDTH | FEB. 22, 2011 | 1500 | 4.19 each = $6,285 xx/xx |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| SDTH | | | |

5.     During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _18TH_ day of _MARCH,_ 2011 in _ROBERTS CREEK_    _B. C. CANADA_
                                                    City                          State _Prov_

(Signature) X_____

2

JS 44C/SDNY
REV. 1/2008

**CIVIL COVER SHEET**

11 CV 1918

JUDGE GRIESA

MAR 18 2011

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| JAMES THOMAS TURNER, Individually and on Behalf of All Others Similarly Situated, | SHENGDATECH, INC., XIANGZHI CHEN, ANDREW WEIWEN CHEN, and ANHUI GUO, |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Robbins Geller Rudman & Dowd, LLP<br>58 So. Service Road, Suite 200, Melville, NY 11747 (631) 367-7100 | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
Pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. Sections 78j(b) and 78t (a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission [17 C.F.R Section 240.10b-5].

Has this or a similar case been previously filed in SDNY at any time? No? [✓] Yes? [ ] Judge Previously Assigned _____

If yes, was this case Vol.[ ] Invol.[ ] Dismissed. No[ ] Yes [ ] If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*                     NATURE OF SUIT

TORTS                                                                              ACTIONS UNDER STATUTES

**CONTRACT**

| | |
|---|---|
| [ ] 110 | INSURANCE |
| [ ] 120 | MARINE |
| [ ] 130 | MILLER ACT |
| [ ] 140 | NEGOTIABLE INSTRUMENT |
| [ ] 150 | RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT |
| [ ] 151 | MEDICARE ACT |
| [ ] 152 | RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) |
| [ ] 153 | RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS |
| [ ] 160 | STOCKHOLDERS SUITS |
| [ ] 190 | OTHER CONTRACT |
| [ ] 195 | CONTRACT PRODUCT LIABILITY |
| [ ] 196 | FRANCHISE |

**REAL PROPERTY**

| | |
|---|---|
| [ ] 210 | LAND CONDEMNATION |
| [ ] 220 | FORECLOSURE |
| [ ] 230 | RENT LEASE & EJECTMENT |
| [ ] 240 | TORTS TO LAND |
| [ ] 245 | TORT PRODUCT LIABILITY |
| [ ] 290 | ALL OTHER REAL PROPERTY |

**PERSONAL INJURY**

| | |
|---|---|
| [ ] 310 | AIRPLANE |
| [ ] 315 | AIRPLANE PRODUCT LIABILITY |
| [ ] 320 | ASSAULT, LIBEL & SLANDER |
| [ ] 330 | FEDERAL EMPLOYERS' LIABILITY |
| [ ] 340 | MARINE |
| [ ] 345 | MARINE PRODUCT LIABILITY |
| [ ] 350 | MOTOR VEHICLE |
| [ ] 355 | MOTOR VEHICLE PRODUCT LIABILITY |
| [ ] 380 | OTHER PERSONAL INJURY |

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**

| | |
|---|---|
| [ ] 441 | VOTING |
| [ ] 442 | EMPLOYMENT |
| [ ] 443 | HOUSING/ ACCOMMODATIONS |
| [ ] 444 | WELFARE |
| [ ] 445 | AMERICANS WITH DISABILITIES - EMPLOYMENT |
| [ ] 446 | AMERICANS WITH DISABILITIES -OTHER |
| [ ] 440 | OTHER CIVIL RIGHTS |

**PERSONAL INJURY**

| | |
|---|---|
| [ ] 362 | PERSONAL INJURY - MED MALPRACTICE |
| [ ] 365 | PERSONAL INJURY PRODUCT LIABILITY |
| [ ] 368 | ASBESTOS PERSONAL INJURY PRODUCT LIABILITY |

**PERSONAL PROPERTY**

| | |
|---|---|
| [ ] 370 | OTHER FRAUD |
| [ ] 371 | TRUTH IN LENDING |
| [ ] 380 | OTHER PERSONAL PROPERTY DAMAGE |
| [ ] 385 | PROPERTY DAMAGE PRODUCT LIABILITY |

**PRISONER PETITIONS**

| | |
|---|---|
| [ ] 510 | MOTIONS TO VACATE SENTENCE 28 USC 2255 |
| [ ] 530 | HABEAS CORPUS |
| [ ] 535 | DEATH PENALTY |
| [ ] 540 | MANDAMUS & OTHER |
| [ ] 550 | CIVIL RIGHTS |
| [ ] 555 | PRISON CONDITION |

**FORFEITURE/PENALTY**

| | |
|---|---|
| [ ] 610 | AGRICULTURE |
| [ ] 620 | OTHER FOOD & DRUG |
| [ ] 625 | DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 |
| [ ] 630 | LIQUOR LAWS |
| [ ] 640 | RR & TRUCK |
| [ ] 650 | AIRLINE REGS |
| [ ] 660 | OCCUPATIONAL SAFETY/HEALTH |
| [ ] 690 | OTHER |

**LABOR**

| | |
|---|---|
| [ ] 710 | FAIR LABOR STANDARDS ACT |
| [ ] 720 | LABOR/MGMT RELATIONS |
| [ ] 730 | LABOR/MGMT REPORTING & DISCLOSURE ACT |
| [ ] 740 | RAILWAY LABOR ACT |
| [ ] 790 | OTHER LABOR LITIGATION |
| [ ] 791 | EMPL RET INC SECURITY ACT |

**IMMIGRATION**

| | |
|---|---|
| [ ] 462 | NATURALIZATION APPLICATION |
| [ ] 463 | HABEAS CORPUS- ALIEN DETAINEE |
| [ ] 465 | OTHER IMMIGRATION ACTIONS |

**BANKRUPTCY**

| | |
|---|---|
| [ ] 422 | APPEAL 28 USC 158 |
| [ ] 423 | WITHDRAWAL 28 USC 157 |

**PROPERTY RIGHTS**

| | |
|---|---|
| [ ] 820 | COPYRIGHTS |
| [ ] 830 | PATENT |
| [ ] 840 | TRADEMARK |

**SOCIAL SECURITY**

| | |
|---|---|
| [ ] 861 | HIA (1395ff) |
| [ ] 862 | BLACK LUNG (923) |
| [ ] 863 | DIWC/DIWW (405(g)) |
| [ ] 864 | SSID TITLE XVI |
| [ ] 865 | RSI (405(g)) |

**FEDERAL TAX SUITS**

| | |
|---|---|
| [ ] 870 | TAXES (U.S. Plaintiff or Defendant) |
| [ ] 871 | IRS-THIRD PARTY 26 USC 7609 |

**OTHER STATUTES**

| | |
|---|---|
| [ ] 400 | STATE REAPPORTIONMENT |
| [ ] 410 | ANTITRUST |
| [ ] 430 | BANKS & BANKING |
| [ ] 450 | COMMERCE |
| [ ] 460 | DEPORTATION |
| [ ] 470 | RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 480 | CONSUMER CREDIT |
| [ ] 490 | CABLE/SATELLITE TV |
| [ ] 810 | SELECTIVE SERVICE |
| [x] 850 | SECURITIES/ COMMODITIES/ EXCHANGE |
| [ ] 875 | CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 890 | OTHER STATUTORY ACTIONS |
| [ ] 891 | AGRICULTURAL ACTS |
| [ ] 892 | ECONOMIC STABILIZATION ACT |
| [ ] 893 | ENVIRONMENTAL MATTERS |
| [ ] 894 | ENERGY ALLOCATION ACT |
| [ ] 895 | FREEDOM OF INFORMATION ACT |
| [ ] 900 | APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 950 | CONSTITUTIONALITY OF STATE STATUTES |

*Check if demanded in complaint:*

[x] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [✓] YES [ ] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____ DOCKET NUMBER _____

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(PLACE AN x IN ONE BOX ONLY)                    **ORIGIN**

☑ 1 Original          ☐ 2a. Removed from       ☐ 3 Remanded from    ☐ 4 Reinstated or    ☐ 5 Transferred from    ☐ 6 Multidistrict       ☐ 7 Appeal to District
   Proceeding             State Court              Appellate Court       Reopened           (Specify District)        Litigation              Judge from
                      ☐ 2b.Removed from                                                                                                       Magistrate Judge
                         State Court AND                                                                                                      Judgment
                         at least one
                         party is pro se.

(PLACE AN x IN ONE BOX ONLY)                  **BASIS OF JURISDICTION**                            **IF DIVERSITY, INDICATE**
☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☑ 3 FEDERAL QUESTION         ☐ 4 DIVERSITY           **CITIZENSHIP BELOW.**
                                               (U.S. NOT A PARTY)                                  **(28 USC 1322, 1441)**

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|                           | PTF  DEF  |                                          | PTF  DEF  |                                   | PTF  OEF  |
|---------------------------|-----------|------------------------------------------|-----------|-----------------------------------|-----------|
| CITIZEN OF THIS STATE     | [ ]1  [ ]1 | CITIZEN OR SUBJECT OF A                 | [ ]3 [ ]3 | INCORPORATED and PRINCIPAL PLACE | [ ]5  [ ]5 |
|                           |           | FOREIGN COUNTRY                          |           | OF BUSINESS IN ANOTHER STATE      |           |
| CITIZEN OF ANOTHER STATE  | [ ]2  [ ]2 | INCORPORATED or PRINCIPAL PLACE         | [ ]4 [ ]4 | FOREIGN NATION                    | [ ]6  [ ]6 |
|                           |           | OF BUSINESS IN THIS STATE                |           |                                   |           |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

        1473 Park Avenue
        Roberts Creek, B.C.
        Von 2W2

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

        Unit 2003 East Tower 620 Zhang Yang Road

        Zhong Rong Heng Rui International Plaza Pudong District

        Shanghai, 200122

        China

DEFENDANT(S) ADDRESS UNKNOWN
   REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:      THIS ACTION SHOULD BE ASSIGNED TO:       ☐ WHITE PLAINS       ☑ MANHATTAN
                (DO NOT check either box if this a PRISONER PETITION.)

DATE  03/18/11   SIGNATURE OF ATTORNEY OF RECORD                    ADMITTED TO PRACTICE IN THIS DISTRICT
                                                                    [ ] NO
RECEIPT #                                                           [X] YES (DATE ADMITTED Mo. 05    Yr. 1995 )
                                                                    Attorney Bar Code # SR7957

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____   **FREEMAN** Designated.

J. Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)