UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JAMES THOMAS TURNER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>SHENGDATECH, INC., et al.,<br><br>    Defendants. | Civil Action No. 1:11-cv-01918-TPG<br><br><u>CLASS ACTION</u> |
| MARLON FUND SICAV PLC, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>SHENGDATECH, INC., et al.,<br><br>    Defendants. | Civil Action No. 1:11-cv-01996-RJH<br><br><u>CLASS ACTION</u> |

[Caption continued on following page.]


MEMORANDUM IN SUPPORT OF THE MOTION OF DONALD D. YAW AND EDWARD J. SCHAUL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL

| | |
|---|---|
| ──────────────────────────── x<br>ERIK S. MATHES, on Behalf of Himself and :<br>All Others Similarly Situated, :<br>: :<br>Plaintiff, :<br>: :<br>vs. :<br>: :<br>SHENGDATECH, INC., et al., :<br>: :<br>Defendants. :<br>──────────────────────────── :<br>DONALD D. YAW and EDWARD J. :<br>SCHAUL, Individually and on Behalf of All :<br>Others Similarly Situated, :<br>: :<br>Plaintiffs, :<br>: :<br>vs. :<br>: :<br>SHENGDATECH, INC., et al., :<br>: :<br>Defendants. :<br>──────────────────────────── x | Civil Action No. 1:11-cv-02064-UA<br><br>CLASS ACTION<br><br><br><br><br><br><br><br><br><br>Civil Action No. 1:11-cv-0_____-UA<br><br>CLASS ACTION |

**I.     PRELIMINARY STATEMENT**

Presently pending before this Court are at least four-related securities class action lawsuits (the "Actions") brought on behalf of all persons, other than defendants, who purchased the common stock of ShengdaTech, Inc. ("ShengdaTech" or the "Company") between May 7, 2008 and March 15, 2011, inclusive (the "Class Period")[1]. The Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Class members Donald D. Yaw ("Yaw") and Edward J. Schaul ("Schaul") hereby move this Court for an Order to: (i) consolidate the Actions; (ii) appoint Yaw and Schaul as Lead Plaintiffs in the Actions under Section 21D of the Exchange Act; and (iii) approve Yaw and Schaul's selection of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as Lead Counsel.

This motion is made on the grounds that Yaw and Schaul are the most adequate plaintiffs, as defined by the PSLRA. Yaw and Schaul collectively suffered losses of $1,021,557.33 in connection with their purchases of ShengdaTech common stock. *See* Alba Decl., Ex. B.[2] To the best of our knowledge, this is the greatest loss sustained by any moving Class member or Class member group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions. In addition, Yaw and Schaul, for the purposes of this motion, adequately satisfy the requirements of Rule 23 of

---

[1]     Although the various complaints allege different Class Periods, for the purposes of this motion, the relevant Class Period is the longest period alleged in the complaints.

[2]     References to the "Alba Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of Mario Alba Jr., dated May 17, 2011 and submitted herewith.

the Federal Rules of Civil Procedure in that their claims are typical of the claims of the putative Class and that they will fairly and adequately represent the interests of the Class.[3]

## II. FACTUAL BACKGROUND[4]

ShengdaTech and its subsidiaries are primarily engaged in developing, manufacturing and marketing nano precipitated calcium carbonate products.

The complaint charges ShengdaTech and certain of its officers and directors with violations of the Exchange Act. According to the complaint, during the Class Period, defendants issued materially false and misleading statements regarding the Company's business and prospects. Specifically, defendants misrepresented and/or failed to disclose the following adverse facts: (a) that ShengdaTech was operating with material deficiencies in the system of internal control over its financial reporting; (b) that ShengdaTech's financial statements, during at least 2010, were not fairly presented in conformity with U.S. GAAP and were materially false and misleading; and (c) that, based on the foregoing, defendants lacked a reasonable basis for their positive statements about ShengdaTech's revenues, expenses, income, margins, markets, growth, average selling prices, and customers.

On March 15, 2011, the Company issued a press release announcing that it had appointed a special committee of the Board of Directors to investigate "potentially serious discrepancies and unexplained issues relating to the Company and its subsidiaries' financial records identified by the Company's auditors" in the course of their examination of ShengdaTech's consolidated financial

---

[3] In addition to providing sworn certifications attesting that they understand their responsibilities as Lead Plaintiffs, Yaw and Schaul have submitted a joint declaration in support of their motion which provides details regarding their longstanding, pre-existing relationship and their commitment to vigorously prosecute this litigation on behalf of the Class. See Alba Decl., Ex. F.

[4] These facts are drawn from the allegations in the complaint captioned *Donald D. Yaw and Edward J. Schaul v. ShengdaTech, Inc., et al.*, No. _____; *see* Alba Decl., Ex. E.

statements for the year ended December 31, 2010. The Company further announced that its Audit Committee had retained O'Melveny & Myers LLP as independent outside counsel, which had initiated an internal investigation, that the SEC had been notified about the commencement of the internal investigation, and that the Company would not file its 2010 Form 10-K in a timely manner. In response to this unexpected announcement, trading in the Company's shares was suspended.

On April 29, 2011, ShengdaTech filed with the SEC a Form 8-K announcing that NASDAQ determined that the continued listing of the Company's securities was no longer warranted and that Defendant Anhui Guo, the Company's Chief Operating Officer, acting Chief Financial Officer, and Director, resigned. Such Form 8-K also disclosed that on April 19, 2011, ShengdaTech's Board of Directors received a letter from the Company's independent auditor, KPMG, indicating that, in the view of KPMG, senior management of the Company had not taken, and the Company's Board of Directors has not caused senior management to take, timely and appropriate remedial actions with respect to discrepancies and/or issues relating to the Company's financial records that were identified during the course of the audit for the year ended December 31, 2010, and that this failure to take remedial action was expected to cause KPMG's resignation from the audit engagement.

On May 5, 2011, ShengdaTech filed with the SEC a Form 8-K announcing that on April 29, 2011, KPMG informed ShengdaTech of its resignation as the Company's independent auditor. KPMG had served as the Company's independent registered public accounting firm since November 11, 2008. Such Form 8-K also disclosed that KPMG previously informed the Company's Audit Committee of certain concerns arising during its incomplete audits of the Company's consolidated financial statements as of and for the year ended December 31, 2010, and the effectiveness of internal control over financial reporting as of December 31, 2010. These concerns included serious discrepancies and unexplained issues relating to, among others: (i) the Company's bank balances; (ii) transactions with major suppliers; (iii) VAT invoices and payments; (iv) sales and payments for

sales by third parties; (v) sales to the Company's second largest customer; (vi) discrepancies between KPMG's direct calls to customers and confirmations returned by mail; and (vii) concerns raised by directly confirming customer sales and accounts receivables.

As a result of the foregoing, KPMG informed the Company that disclosures should be made and action should be taken to prevent future reliance on their previously issued audit reports related to the consolidated balance sheets of ShengdaTech and its subsidiaries as of December 31, 2008 and 2009, and the related consolidated statements of income, shareholders' equity and comprehensive income, and cash flows for the years then ended and the effectiveness of internal control over financial reporting as of December 31, 2008 and 2009.

## III.    ARGUMENT

### A.    The Actions Should Be Consolidated For All Purposes

The Actions each assert class claims on behalf of the purchasers of ShengdaTech common stock for alleged violations of the Exchange Act during the Class Period. The Actions name the same defendants and involve the same factual and legal issues. They are each brought by investors who purchased ShengdaTech common stock during the Class Period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information, thus artificially inflating the prices of ShengdaTech common stock at all relevant times. Consolidation is appropriate where there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42 (a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). That test is met here and, accordingly, the Actions should be consolidated.

### B.       Yaw and Schaul Should Be Appointed Lead Plaintiffs

#### 1.       The Procedure Required By The PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the action entitled *James Thomas Turner v. ShengdaTech, Inc., et al.*, No. 11-cv-1918-TPG, caused the first notice regarding the pendency of the Actions to be published on *Business Wire*, a national, business-oriented newswire service, on March 18, 2011. *See* Alba Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. Yaw and Schaul Satisfy the "Lead Plaintiff" Requirements of the Exchange Act

#### a. Yaw and Schaul Have Complied With the Exchange Act and Should Be Appointed Lead Plaintiffs

The time period in which Class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on May 17, 2011.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice on March 18, 2011, Yaw and Schaul timely move this Court to be appointed Lead Plaintiffs on behalf of all members of the Class.

Yaw and Schaul have duly signed and filed certifications stating that they are willing to serve as representative parties on behalf of the Class.  *See* Alba Decl., Ex. C.  In addition, Yaw and Schaul have selected and retained competent counsel to represent themselves and the Class.  *See* Alba Decl., Ex. D.  Accordingly, Yaw and Schaul have satisfied the individual requirements of 15 U.S.C. §78u4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiffs and approval of selection of Lead Counsel, as set forth herein, considered and approved by the Court.

#### b. Yaw and Schaul Have the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, *see* Alba Decl., Ex. C., Yaw and Schaul purchased ShengdaTech common stock in reliance upon the materially false and misleading statements issued by defendants and were injured thereby.  In addition, Yaw and Schaul collectively incurred a substantial $1,021,557.33 loss on their transactions in ShengdaTech common stock.  *See* Alba Decl., Ex. B.  Yaw and Schaul thus have a significant financial interest in this case.  Therefore, Yaw and Schaul satisfy all of the PSLRA's

prerequisites for appointment as Lead Plaintiffs in the Actions and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### c. Yaw and Schaul Otherwise Satisfy Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 11, 1997). Yaw and Schaul satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are

typical. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004).

Yaw and Schaul satisfy this requirement because, just like all other Class members, they: (1) purchased ShengdaTech common stock during the Class Period; (2) purchased ShengdaTech common stock in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, Yaw and Schaul's claims are typical of those of other Class members since their claims and the claims of other Class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Yaw and Schaul to represent the Class to the existence of any conflicts between the interests of Yaw and Schaul and the members of the Class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

Here, Yaw and Schaul are adequate representatives of the Class. As evidenced by the injuries suffered by Yaw and Schaul, who purchased ShengdaTech common stock at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of Yaw and Schaul are clearly aligned with the members of the Class, and there is no evidence of any

antagonism between Yaw and Schaul's interests and those of the other members of the Class. Further, Yaw and Schaul have taken significant steps which demonstrate they will protect the interests of the Class: they have retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Yaw and Schaul's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Yaw and Schaul *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C. The Court Should Approve Yaw and Schaul's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, Yaw and Schaul have selected the law firm of Robbins Geller as Lead Counsel, a firm which has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.), in which Robbins Geller achieved the largest recovery ever obtained in a shareholder class action. *See* Alba Decl., Ex. D. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

## IV.   CONCLUSION

For all the foregoing reasons, Yaw and Schaul respectfully request that the Court: (i) consolidate the Actions; (ii) appoint Yaw and Schaul as Lead Plaintiffs in the Actions; (iii) approve their selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the Court may deem just and proper.

DATED: May 17, 2011 ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.

                                         */s/ Mario Alba Jr.*
                                    MARIO ALBA JR.

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
malba@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Mario Alba Jr., hereby certify that, on May 17, 2011, I caused a true and correct copy of the attached:

Notice of Motion for Consolidation, Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel;

Memorandum of Law in Support of the Motion of Donald D. Yaw and Edward J. Schaul for Consolidation, Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel; and

Declaration of Mario Alba Jr. in Support of the Motion of Donald D. Yaw and Edward J. Schaul for Consolidation, Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel.

                                                         */s/ Mario Alba Jr.*
                                                         Mario Alba Jr.