UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                  :

In re SHENGDATECH, INC. SECURITIES    :
LITIGATION                                  :

                                  :        11 Civ. 1918 (LGS)
                                  :
                                  :        <u>OPINION AND ORDER</u>
                                  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Shareholders of ShengdaTech, Inc. ("ShengdaTech" or the "Company") brought suit

against ShengdaTech and its officers and directors for securities fraud.  This consolidated action

is now before the Court on the motion of Defendants A. Carl Mudd and Sheldon B. Saidman to

dismiss the Third Consolidated Amended Class Action Complaint.  For the following reasons,

their motion is granted.

## BACKGROUND

### I.    Relevant Events

      The following facts are taken from the Third Consolidated Amended Class Action

Complaint (the "Complaint" or "TAC") and certain public documents filed in other courts or

with the SEC that are attached to or referenced in the Complaint and motion papers, of which the

Court takes judicial notice.

      Defendant ShengdaTech, a corporation headquartered in China, is a manufacturer of

nano-precipitated calcium carbonate, an additive used in products such as tires, ink, paint, latex,

paper and polyethylene products.  ShengdaTech became a publicly traded company in January

2007 after a reverse merger with a dormant public shell company incorporated in Nevada.

Defendants Mudd and Saidman became members of ShengdaTech's five-member Board of

Directors in February 2007, and both served on its three-member Audit Committee, which

Defendant Mudd chaired.  Both Defendants Mudd and Saidman signed ShengdaTech's Forms 10-K for the years ending 2006 to 2009.

In or around May 2010, an unidentified member of the Audit Committee met with a lead audit partner from KPMG HK, which had been ShengdaTech's auditor since late 2008, to discuss its review of ShengdaTech's financial statements for the first quarter of 2010.  The KPMG HK partner mentioned to the Audit Committee member that during its audit of ShengdaTech's 2009 financial statements, it received more third party audit confirmations than it had requested.  The Audit Committee member asked that KPMG HK "look more closely at [the] confirmations when auditing the 2010 [f]inancial [s]tatements."

In early and mid-March 2011, in writing and by telephone, KPMG HK informed the Audit Committee of significant discrepancies between its findings and ShengdaTech's records with respect to ShengdaTech's customers, sales, suppliers and bank balances, and that "ShengadaTech management had misdirected, intercepted and/or otherwise interfered with [] confirmation requests and responses."  On March 15, 2011, ShengdaTech announced that it had appointed a Special Committee of the Board, comprised of the three members of the Audit Committee (including Defendants Mudd and Saidman), to investigate those discrepancies. ShengdaTech also announced that (i) the Audit Committee had retained O'Melveny & Myers LLP as independent legal counsel to conduct the internal investigation; (ii) it had notified the SEC about the commencement of the investigation; and (iii) it would not timely file its 2010 Form 10-K.  On April 29, 2011, KPMG HK resigned its position as ShengdaTech's auditor. KPMG HK put the ShengdaTech Board on notice of its intent to resign in a letter in which it expressed its view that:

> [S]enior management of the Company had not taken, and the Company's Board of Directors had not caused senior management to take, timely and appropriate remedial actions with respect to discrepancies and/or issues relating to the Company's financial

records that were identified during the course of the audit for the year ended December 31, 2010.

In a Form 8-K filed on May 5, 2011, ShengdaTech announced that KPMG HK's audit reports on the Company's year-end financial statements for 2008 and 2009 should no longer be considered reliable. Later that month, the Special Committee retained the law firm Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to take over the internal investigation. On August 19, 2011, Skadden presented to the Special Committee its preliminary report, in which it "confirmed material irregularities and/or inaccuracies in the financial records of the Company." On the same day, the Special Committee authorized and directed ShengdaTech to file a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code.

## II. Allegations Implicating Defendants Mudd & Saidman

In addition to the Audit Committee, Defendants Mudd and Saidman also sat on the Board's Compensation Committee and Nominating and Corporate Governance Committee. The 2009 Form 10-K stated that both Defendants were qualified to serve on the ShengdaTech Board because of their "extensive knowledge" of ShengdaTech. For their positions, they were compensated as follows: Defendant Mudd received $75,000 in cash annually for 2008 and 2009, plus $58,945 in options for 2008; and Defendant Saidman received $35,000 in cash annually for 2008 and 2009.

Defendant Mudd, the Chairman of the three-person Audit Committee, is a Certified Public Accountant. He is considered an "audit committee financial expert" under SEC rules, a designation demonstrating his "thorough understanding of the Audit Committee's oversight role, expertise in accounting matters[,] a deep understanding of financial statements, and the ability to ask the right questions to determine whether the [C]ompany's financial statements were complete and accurate." The Audit Committee was "directly responsible for the appointment,

retention, compensation, and oversight" of KPMG HK's work, and met with KPMG HK on a quarterly basis between May 2008 and March 2011.

The 2008 Form 10-K, signed by Defendants Mudd and Saidman among others, was filed on April 1, 2009.  During 2008, the Audit Committee met nine times, with the rate of attendance exceeding 75 percent for all three Audit Committee members.  In connection with the 2008 Form 10-K, KPMG HK issued an audit report in which it stated that "ShengdaTech, Inc. and subsidiaries have not maintained effective internal control over financial reporting as of December 31, 2008 . . . ."  The Complaint alleges that statements made in the 2008 Form 10-K were "materially false and misleading when made because they misrepresented and failed to disclose" a number of facts known to or recklessly disregarded by Defendants, including that they overstated ShengdaTech's sales, income, cash accounts, the amount of goods purchased from suppliers and the number of customers; that ShengdaTech's financial statements did not conform with U.S. GAAP; that ShengdaTech was participating in undisclosed related-party transactions; and that ShengdaTech was materially lacking in its internal controls over its financial reporting.

The Complaint alleges that for the period ending December 31, 2008, while ShengdaTech reported net sales of $82.4 million and net income of $36.03 million to the SEC, it reported net sales of $9.5 million and a net loss of $2 million to the Chinese Administration of Industry and Commerce ("AIC"), the business regulatory agency in China.

The three Forms 10-Q filed in March, June and September 2009, which Defendants Mudd and Saidman did not sign, each stated that management had concluded at the end of the respective quarters that "the Company's disclosure controls and procedures were not effective . . . due to the fact that the material weaknesses in the Company's internal control over financial

reporting described in [the 2008 Form 10-K] ha[d] not been remediated . . . although steps ha[d] been taken toward remediation . . . ."

The 2009 Form 10-K, signed by Defendants Mudd and Saidman among others, was filed on March 15, 2010.  During 2009, the Audit Committee met seven times, with all three members attending all meetings.  Both the 2009 Form 10-K and KPMG HK's audit report in connection with it represented that the Company's internal control over financial reporting was effective as of December 31, 2009.  As with the 2008 Form 10-K, the Complaint alleges that statements made in the 2009 Form 10-K were "materially false and misleading when made because they misrepresented and failed to disclose" a number of facts known to or recklessly disregarded by Defendants, including that they overstated ShengdaTech's sales, income, cash accounts, the amount of goods purchased from suppliers and the number of customers; that ShengdaTech's financial statements did not conform with U.S. GAAP; that ShengdaTech was participating in undisclosed related-party transactions; and that ShengdaTech was materially lacking in its internal controls over its financial reporting.

The Complaint alleges that for the period ending December 31, 2009, while ShengdaTech reported net sales of $102.1 million and net income of $23.1 million to the SEC, it reported net sales of $6.07 million and a net loss of $6.2 million to the AIC.

The Complaint alleges that Defendants Mudd and Saidman were involved in ShengdaTech's affairs in other ways.  Both attended meetings as members of the Compensation Committee and Nominating and Corporate Governance Committee.  As members of the Audit Committee, they held routine meetings with auditors and management, including

> 1) quarterly meetings, which include private meetings with the independent auditors and review of their audit reports as well as review and approval of financial statements, Form 10-Q and the Earnings Press Release and other such disclosures; 2) annual meetings, which include face-to-face meetings with the independent auditors, face-to-face meetings with the CFO and other functional senior management, as well

> as review and approval of the financial statements, Form 10-K, Internal Audit Plans, and the annual operating and capital expenditure budgets; 3) special meetings, which include review of important "open items" from prior meetings or issues needing resolution by management prior to year-end; and 4) discussions of long-term strategic plans, including projected capital requirements.

As directors, Defendants Mudd and Saidman attended Board meetings with other members of the ShengdaTech Board, which included members of ShengdaTech's senior management. The Board was also involved in ShengdaTech's 2010 note offering, in which it and financial advisors "considered a number of alternatives for raising capital" before deciding on a $130 million convertible debt offering. In connection with the note offering, the Complaint alleges that because "the Director Defendants [i.e., Defendants Mudd and Saidman and another Defendant director] were involved in weighing the utility of certain different financial strategic alternatives for the Company . . . and . . . the decision making process, it is clear that the Director Defendants were intimately involved with the affairs of the Company."

The Complaint alleges in essence that the Director Defendants, including Mudd and Saidman, acted recklessly by failing to monitor available information and ascertain the true condition of ShengdaTech between May 6, 2008, and March 15 2011 (the "Class Period"), and that they are responsible for the Company's false statements about its condition during that period. Specifically, the Complaint alleges that the Director Defendants "failed to check information that they had a duty to monitor," "were reckless in failing to check the falsity of the financial statements published in the Company's SEC filings" that they signed, and thus breached their fiduciary duties. The Complaint further alleges that "[h]ad the Director Defendants comprehensively and adequately monitored [ShengdaTech], its core operations and its business, as they were obligated to, they would have noticed significant 'red flags'" – i.e., the alleged material misrepresentations and omissions in the filings, as noted above – "which would have alerted them of the massive accounting fraud being perpetrated by the Company and its

6

management."  The Complaint alleges generally that all individual Defendants in the case,

including Mudd and Saidman, had

> access to the adverse undisclosed information about [ShengdaTech's] business,
> operations, products, operational trends, financial statements, markets and present and
> future business prospects via internal corporate documents . . . , conversations and
> connections with other corporate officers and employees, attendance at management
> and Board of Directors meetings and committees thereof and via reports and other
> information provided to them in connection therewith.

Moreover, the Complaint alleges that all individual Defendants, including Mudd and Saidman,

"were motivated to engage in a fraudulent course of conduct in order to allow the Company to

sell convertible securities in two note offerings to unsuspecting investors at artificially inflated

prices."

## III.   Procedural History

Shortly after ShengdaTech's appointment of the Special Committee to investigate the

alleged discrepancies in its financial statements, a number of shareholders commenced suits in

this district.  On December 6, 2011, Judge Griesa, who presided over the cases at the time,

consolidated the actions and appointed Lead Plaintiffs.  On October 15, 2012, Lead Plaintiffs

filed a Consolidated Amended Complaint, adding Defendants Mudd and Saidman as parties.

On December 27, 2012, Defendants Mudd and Saidman filed a motion to dismiss the

Consolidated Amended Complaint.  On March 8, 2013, approximately one month after filing a

response in opposition to the motion, Lead Plaintiffs filed a motion seeking leave to file a

Second Consolidated Amended Complaint.  On August 6, 2013, Lead Plaintiffs filed the Second

Consolidated Amended Complaint without the Court's leave.  On August 22, 2013, Judge Griesa

granted Defendants Mudd and Saidman's motion to dismiss the Consolidated Amended

Complaint without ruling on the propriety of Lead Plaintiffs' filing the Second Consolidated

Amended Complaint.

On September 3, 2013, the consolidated action was transferred from Judge Griesa to me. On September 5, 2013, Lead Plaintiffs filed a motion for reconsideration, asking that the Court vacate Judge Griesa's August 22 order in light of the Second Consolidated Amended Complaint. On October 4, 2013, the Court granted Lead Plaintiffs' motion for reconsideration, vacating Judge Griesa's August 22 order dismissing Defendants Mudd and Saidman. The Court also granted leave for Lead Plaintiffs to file a Third Amended Complaint. On October 28, 2013, Lead Plaintiffs filed the currently operative TAC, on behalf of all purchasers of ShengdaTech's common stock during the Class Period.

The TAC states three causes of action: (i) violation of § 10(b) of the Securities Exchange Act ("Exchange Act") and Rule 10b-5 against ShengdaTech and individual Defendants, including Defendants Mudd and Saidman; (ii) violation of § 10(b) and Rule 10b-5 against KPMG HK; and (iii) violation of § 20(a) of the Exchange Act against the individual Defendants, including Mudd and Saidman.

**STANDARD**

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations. *See Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 555), *cert. denied*, 133 S. Ct. 846 (2013).

Additionally, where the alleged predicate acts are frauds, a plaintiff must "state with particularity the circumstances constituting fraud" pursuant to Federal Rule of Civil Procedure 9(b). The particularity requirement under Rule 9(b) requires the plaintiff to "'allege the time, place, speaker and sometimes even the content of the alleged misrepresentation.'" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 579 (2d Cir. 2005) (quoting *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993)). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Moreover, securities fraud claims are subject to the "[e]xacting pleading requirements" of the Private Securities Litigation Reform Act of 1995, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), which provides that the complaint shall state with particularity "all facts on which [the] belief [that a statement is misleading] is formed," 15 U.S.C. § 78u-4(b)(1)(B), and "facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A).

## DISCUSSION

Defendants Mudd and Saidman move to dismiss the § 10(b), Rule 10b-5 and § 20(a) claims against them.

## I.      § 10(b) & Rule 10b-5

The Complaint fails to plead the scienter required for § 10(b) and Rule 10b-5 claims as to Defendants Mudd and Saidman.

### A.      Scienter

Securities fraud claims brought pursuant to § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder consist of six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the

9

purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). "The requisite state of mind in a section 10(b) and Rule 10b-5 action is an intent to deceive, manipulate, or defraud." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (internal quotation marks omitted). The scienter requirement may be met by alleging facts to show either "(1) that defendants had the motive and opportunity to commit fraud[] or (2) strong circumstantial evidence of conscious misbehavior or recklessness," but where motive is lacking, "the strength of the circumstantial allegations must be correspondingly greater . . . ." *Id.* at 198-99 (internal quotation marks omitted).

Recklessness is a "sufficiently culpable mental state" for § 10(b) and Rule 10b-5 claims. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008); *see also Tellabs*, 551 U.S. at 319 n.3 ("Every Court of Appeals that has considered the issue has held that a plaintiff may meet the scienter requirement by showing that the defendant acted intentionally *or recklessly* . . . ." (emphasis added)). Recklessness is "'at the least, . . . an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA*, 553 F.3d at 198 (alterations in original) (internal quotation marks omitted). It must "approximat[e] actual intent, and [is] not merely a heightened form of negligence." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (internal quotation marks omitted). The Second Circuit has observed that:

> [a]t least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately

illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.

*ECA*, 553 F.3d at 199 (internal quotation marks omitted).

The Supreme Court has held that for an inference of the requisite scienter to be "strong" in accordance with § 78u-4(b)(2)(A), it must be "more than merely 'reasonable' or 'permissible' – it must be cogent and . . . at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. That inquiry cannot be conducted in a vacuum, but is "inherently comparative" – i.e., "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id*. at 323-24. Thus, while the inference of scienter "need not be irrefutable . . . or even the most plausible of competing inferences," it must be "strong in light of other explanations." *Id.* at 324 (internal quotation marks omitted).

Here, the Complaint fails to plead scienter for Defendants Mudd and Saidman with respect to the alleged misrepresentations and omissions in the 2008 and 2009 Forms 10-K, which they signed. First, the Complaint lacks any specific allegations of Defendants Mudd and Saidman's actual knowledge that the 2008 and 2009 Forms 10-K were false or misleading at the time of filing. Moreover, the only motive articulated by the Complaint – a desire among individual Defendants to sell ShengdaTech securities at inflated prices – is insufficient to establish scienter specifically with respect to Defendants Mudd and Saidman. *See Teamsters*, 531 F.3d at 196-97 (holding that a desire to avoid disclosing the impaired quality of collateral on various loans can be attributed to "virtually all corporate insiders" and therefore cannot be used to establish the motive necessary for scienter); *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (holding same with respect to a desire to "sustain the appearance of corporate profitability, or of the success of an investment" (internal quotation marks omitted)).

To the extent that the claims against Defendants Mudd and Saidman rely on a recklessness theory in the absence of any showing regarding their motive, the Complaint does not allege the existence of "strong circumstantial evidence" of the requisite degree of recklessness.  Lead Plaintiffs allege that as compensated members of the ShengdaTech Board and its Audit, Compensation and Nominating and Corporate Governance Committees, Defendants Mudd and Saidman routinely met with senior management and KPMG HK; reviewed financial statements, audit reports and budgets; and participated in discussions about financing and other long-term strategic plans.  These are generic allegations about the routine activities of outside directors, from which the Court cannot strongly infer that the inaccuracies in the 2008 and 2009 Form 10-Ks were "so obvious" that Defendants Mudd and Saidman "must have been aware of" them.  *ECA*, 553 F.3d at 198.  The same can be said for Defendant Mudd's status as an "audit committee financial expert" and a Certified Public Accountant, and the 2009 Form 10-K's representation that both Defendants Mudd and Saidman were qualified to sit on the Board because they have "extensive knowledge" of ShengdaTech.  To hold otherwise with respect to these allegations would require the Court to draw the requisite inference from "general allegations that it would be 'logical' for [Defendants Mudd and Saidman] to have been aware of certain things . . . ."  *Davidoff v. Farina*, No. 04 Civ. 7617, 2005 WL 2030501, at *17 (S.D.N.Y. Aug. 22, 2005); *see also McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 129 (S.D.N.Y. 2013) ("[I]f recklessness means something more culpable than negligence, as it must, then an allegation that a defendant merely 'ought to have known' is not sufficient to allege recklessness." (alteration in original) (internal quotation marks omitted)).

Insofar as Lead Plaintiffs attempt to plead recklessness by alleging that Defendants Mudd and Saidman breached any duties that they may have had as directors and Audit Committee members, the Complaint fails to define such duties.  *See In re WorldCom, Inc. Sec. Litig.*, No. 02

Civ. 3288, 2003 WL 23174761, at *5 (S.D.N.Y. Dec. 3, 2003) (holding that the audit committee

defendants' alleged failure to communicate with auditors could not establish recklessness in the

absence of specific allegations regarding the particulars of their duties).  While the Complaint

alleges in essence that the Audit Committee is "directly responsible for the appointment,

retention, compensation, and oversight" of ShengdaTech's auditor (i.e., KPMG HK), it does not

allege with any particularity how Defendants Mudd and Saidman failed to fulfill such "vaguely

worded" responsibilities.  *See id.* at *4.

Lead Plaintiffs argue that Defendants Mudd and Saidman disregarded a number of red

flags, including:

> (i) that the Company was falsifying its reported sales; (ii) that the Company
> manipulated the amount of goods it purchased from the Company's major suppliers;
> (iii) that the Company's bank account balances were grossly exaggerated; and (iv)
> that had the Director Defendants compared ShengdaTech's SEC filings with the
> combined results of ShengdaTech's indirect subsidiaries as reported to the Chinese
> AIC, it would have discovered that the Company was materially overstating its
> financial results throughout the Class Period.

With respect to the first three purported red flags, the Complaint again offers only general

allegations regarding Defendants Mudd and Saidman's activities as directors of ShengdaTech

(i.e., their routine attendance at Board and committee meetings and review of related documents)

as bases for their knowledge, and fails to make any specific allegations to support the inference

that they knew or must have known of the alleged red flags.  As courts in this Circuit have

consistently held, "[u]nseen red flags cannot be heeded."  *McIntire*, 927 F. Supp. 2d at 130;

*accord Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 254 (S.D.N.Y. 2012); *Stephenson*

*v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 573 (S.D.N.Y. 2011), *aff'd*, 482 F.

App'x 618 (2d Cir. 2012); *see also Saltz v. First Frontier, L.P.*, 485 F. App'x 461, 465 (2d Cir.

2012) ("[R]ed flags are insufficient to plead the required strong inference, in part because [the

plaintiff] makes no allegation supporting the conclusion that [the defendant] was aware of them.").

Only one purported red flag is supported by specific allegations – the discrepancies between ShengdaTech's SEC and AIC filings with respect to its net sales and net income in 2008 and 2009.  But even there, the Complaint fails to allege any facts tending to demonstrate, even circumstantially, that Defendants Mudd and Saidman reviewed, must have reviewed or had a specific duty to review the AIC filings containing the alleged discrepancies.  Courts in this Circuit have held that mere alleged access to information through which a defendant could have discovered red flags is insufficient to plead scienter.  *See, e.g.*, *McIntire*, 927 F. Supp. 2d at 130 (citing *Rothman v. Gregor*, 220 F.3d 81, 97 (2d Cir. 2000), and district court cases involving claims against auditors); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 519 (S.D.N.Y. 2011); *In re Tremont Sec. Law, State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 370 (S.D.N.Y. 2010).  Although Lead Plaintiffs cite a case that they characterize in their brief as standing for the proposition that "the facts that the company went public via reverse merger and that the AIC and SEC filings differed so widely were red flags that should have put defendants on notice of fraud," the court in that case held the opposite.  *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11 Civ. 2279, 2012 WL 3758085, at *16-18 (S.D.N.Y. Aug. 29, 2012).  Noting that the complaint failed to allege a "critical premise," i.e. that the defendant was "actually aware of the AIC filings and the discrepancies they reflected," the court found that the alleged discrepancies between SEC and AIC filings in that case was a "non-red flag[]."  *Id.* at *16-17.  Consistently with the cases just cited, the court held that merely alleging that a defendant had access to and should have reviewed documents containing red flags was "not sufficient to plead the recklessness necessary to give rise to a strong inference of auditor scienter."  *Id.* at *17.  The same is true here as to Defendants Mudd and Saidman.

14

Similarly, to the extent that Lead Plaintiffs rely on the internal control deficiencies noted in KPMG HK's 2008 audit report and ShengdaTech's 2009 Forms 10-Q, they do not rise to the level of putting Defendants Mudd and Saidman on notice of fraud with respect to the statements made in the 2008 Form 10-K.  *See In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 480 (S.D.N.Y. 2013) (finding, where the company's auditor had put its audit committee on notice of internal control deficiencies, that such notice does not by itself raise an inference "about how [a] more thorough investigation into these deficiencies would have led the [audit committee] [d]efendants to discover the fraud," especially where the complaint levels the same allegations of fraud against the auditor itself); *cf. McIntire*, 927 F. Supp. 2d at 131 (finding that the annual report's disclosures regarding potential difficulties in collecting financial data and the management's expectation that "internal controls will [not] prevent all error and all fraud" are "mere warning signs" rather than "smoking guns" constituting red flags).

Lead Plaintiffs argue that scienter has been sufficiently pleaded here because the Complaint alleges sufficient facts regarding Defendants Mudd and Saidman's positions as "key officers" involved in ShengdaTech's "core operations," and because of the magnitude of the fraud alleged.  This argument is not persuasive.  First, courts in this Circuit have held that general allegations regarding a defendant's involvement in the "core operations" of a business cannot serve as an independent basis for scienter.  *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 353 (S.D.N.Y. 2011) ("[T]he Court considers "core operations" allegations to constitute supplementary but not independently sufficient means to plead scienter."); *accord City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 296 (S.D.N.Y. 2013); *see also New Orleans Employees Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011) ("[A]llegations of a company's core operations . . . can provide supplemental support for allegations of scienter, even if they cannot establish scienter independently.").  The same goes

for allegations regarding the magnitude of the fraud.  *See In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d at 479 ("[T]he magnitude of a fraud, standing alone, cannot support a strong inference of scienter."); *accord In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 418 (S.D.N.Y. 2003); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 217 (S.D.N.Y. 1999).  Even viewing the allegations regarding core operations and the magnitude of the fraud together and in the broader context of all facts alleged, the Complaint is insufficient to support a strong inference that Defendants Mudd and Saidman were reckless, let alone that their recklessness constituted "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to [them] or so obvious that [they] must have been aware of it."  *ECA*, 553 F.3d at 198.

Because the Complaint fails to plead scienter for Defendants Mudd and Saidman with the specificity required for § 10(b) and Rule 10b-5, this claim is dismissed as to them.

### B.      Group Pleading

To the extent that Lead Plaintiffs seek to hold Defendants Mudd and Saidman liable for other statements alleged in the TAC, that effort is misguided.  Setting the 2008 and 2009 Forms 10-K aside, the group pleading doctrine is insufficient to render Defendants Mudd and Saidman "makers" of any of those statements.  As articulated by a number of district courts in this Circuit, this doctrine allows plaintiffs to "circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of the fraudulent intent by relying on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company."  *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007) (alteration and internal quotation marks omitted); *accord Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 222-23 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x 108 (2d Cir.

2012); *Jimenez v. Brazil Ethanol, Inc.,* No. 11 Civ. 3635, 2011 WL 5932600, at *4 (S.D.N.Y. Nov. 29, 2011).

The group pleading doctrine is unavailing here for two reasons.  First, there is some question whether the group pleading doctrine has been abrogated by *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302-04 (2011), in which the Supreme Court held that an investment advisor was not the "maker" of statements in its client's prospectuses because it did not have "ultimate authority" over those statements.  *See Rolin v. Spartan Mullen Et Cie, S.A.*, No. 10 Civ. 1586, 2011 WL 5920931, at *5 (S.D.N.Y. Nov. 23, 2011) (observing that whether *Janus* abrogates the group pleading doctrine is an "open question"); *see also In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 262 (S.D.N.Y. 2011) (acknowledging, and declining to resolve, the uncertainty surrounding the application of *Janus* to the group pleading doctrine as it relates to federal securities fraud).

Second, even if the group pleading doctrine survives *Janus*, it does not operate to attribute all statements alleged in the Complaint to Defendants Mudd and Saidman.  The group pleading doctrine is "'extremely limited in scope,'" *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 373 (S.D.N.Y. 2012) (quoting *Camofi Master LDC v. Riptide Worldwide, Inc.*, No. 10 Civ. 4020, 2011 WL 1197659, at *6 (S.D.N.Y. Mar. 25, 2011)), and outside directors are "almost by definition excluded from the day-to-day management of a corporation," unless "by virtue of their status or a special relationship with the corporation, they have access to information more akin to a corporate insider."  *Hallet v. Li & Fung, Ltd.*, No. 95 Civ. 8917, 1996 WL 487952, at *4 (S.D.N.Y. Aug. 27, 1996) (internal quotation marks omitted); *accord In re Indep. Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 768 (S.D.N.Y. 2001), *abrogated on other grounds*, *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003).  Here, the Complaint fails to allege facts tending to show

that Defendants Mudd and Saidman, who are outside directors, exceeded those roles and became involved in the everyday business of ShengdaTech.  *See DeAngelis v. Corzine,* No. 11 Civ. 7866, 2014 WL 1695186, at *5 (S.D.N.Y. Apr. 16, 2014) (finding that the plaintiff could not rely on the group pleading doctrine with respect to independent director defendants because it "ma[de] no showing that the [i]ndependent [d]irectors were corporate insiders or involved in [the company's] day-to-day operations"); *Dresner v. Util.com, Inc*., 371 F. Supp. 2d 476, 494 (S.D.N.Y. 2005) (finding same because the plaintiffs did not show that non-insider defendants took part in the preparation of documents in question or otherwise acted like corporate insiders). Consequently, the Complaint fails to plead that Defendants Mudd and Saidman were "makers" of any statements alleged therein other than the 2008 and 2009 Forms 10-K.

## II.      § 20(a)

Most courts in this district have held that, as an element of control person liability under § 20(a), culpable participation is a scienter requirement for which a plaintiff "must allege 'some level of culpable participation at least approximating recklessness in the section 10(b) context'" in order to survive a motion to dismiss.  *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008) (quoting *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 248 (S.D.N.Y. 2006)); *see also Floyd v. Liechtung*, No. 10 Civ. 4254, 2013 WL 1195114, at *6 (S.D.N.Y. Mar. 25, 2013) ("To adequately plead culpable participation, '[p]laintiffs must plead at a minimum particularized facts establishing a controlling person's conscious misbehavior or recklessness in the sense required by Section 10(b).'" (quoting *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010)).[1]  Moreover, most courts have held that

---

[1] There has been a widely acknowledged split among the district courts on whether the culpable participation element is a scienter requirement that must be affirmatively pleaded at the motion to dismiss stage.  The issue has been thoroughly analyzed by courts on both sides of the divide. *Compare, e.g., Lapin*, 506 F. Supp. 2d at 244-48 (Karas, J.) (holding that culpable participation

the PSLRA's heightened pleading requirements apply to the culpable participation element,

which means, as noted above, that the plaintiff must "plead with particularity facts giving rise to

a strong inference" of the requisite state of mind.  15 U.S.C. § 78u-4(b)(2)(A); *see, e.g.*, *In re*

*Global Crossing*, 2005 WL 1907005, at *5 ("[P]laintiffs must plead with particularity facts

giving rise to a strong inference that the controlling person knew or should have known that the

---

is a "pleading requirement to state a section 20(a) claim," and "must be plead with the same particularity as scienter under section 10(b)"); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 413-19 (S.D.N.Y. 2001) (Marrero, J.) (same); *Mishkin v. Ageloff*, No. 97 Civ. 2690, 1998 WL 651065, at *22-26 (S.D.N.Y. Sept. 23, 1998) (Preska, J.) (same), *with In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 307-10 (S.D.N.Y. 2005) (Kaplan, J.) (holding that culpable participation is not an independent element of control person liability, at least at the motion to dismiss stage); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d at 414-16 (Cote, J.) (same); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d at 392-97 (Scheindlin, J.) (same). The Second Circuit has acknowledged, but thus far refrained from resolving, this split.  *See In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 186 (2d Cir. 2011).  Without rehashing the arguments in these opinions, the Court agrees with those courts holding that a plaintiff must sufficiently plead culpable participation as a separate scienter element of control person liability under § 20(a) in order to survive a motion to dismiss.  This conclusion flows from the most natural reading of *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996), which, in the absence of further clarification from the Second Circuit, remains the main source of guidance on this issue for district courts in this Circuit.  *See In re Livent Noteholders Sec. Litig.*, 151 F. Supp. 2d at 416 (reasoning that the court "cannot ignore the import" of the *First Jersey* court's statement of the standard as three distinct elements).  Moreover, with the exception of the several courts that take the contrary position on the issue, most courts in this district have come to recite – routinely and without controversy – the control person liability standard as one requiring all three elements, including culpable participation as scienter, to be affirmatively pleaded.  *See, e.g.*, *Floyd*, 2013 WL 1195114, at *6-7 (Crotty, J.); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 517 (S.D.N.Y. 2009) (Kram, J.); *Edison Fund*, 551 F. Supp. 2d at 231 (Koeltl, J.); *In re Bayer AG Sec. Litig.*, No. 03 Civ.1546, 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004) (Pauley, J.); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 349 (S.D.N.Y. 2004) (Lynch, J.); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 Civ. 8058, 2001 WL 1111508, at *10 (S.D.N.Y. Sept. 20, 2001) (Buchwald, J.).  A number of courts apply the culpable participation element as a scienter requirement, although they do not explicitly so state.  *See Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 Civ. 2700, 2012 WL 3957916, at *22 (S.D.N.Y. Sept. 10, 2012) (Castel, J.); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 509-10 (S.D.N.Y. 2011) (Sweet, J.); *In re J.P. Jeanneret Associates, Inc.*, 769 F. Supp. 2d 340, 376 (S.D.N.Y. 2011) (McMahon, J.); *In re Beacon Associates Litig.*, 745 F. Supp. 2d 386, 411 (S.D.N.Y. 2010) (Sand, J.); *In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967, 2010 WL 2541166, at *13 (S.D.N.Y. June 10, 2010) (McKenna, J.); *Ellison v. Am. Image Motor Co., Inc.*, 36 F. Supp. 2d 628, 637 (S.D.N.Y. 1999) (Chin, J.).

primary violator, over whom that person had control, was engaging in fraudulent conduct." (internal quotation marks omitted)); *McIntire*, 927 F. Supp. 2d at 122 ("[T]he heightened pleading standards of the PSLRA apply with respect to the third-prong of a § 20(a) claim, which requires plaintiffs to . . . plead with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind, i.e., scienter." (internal quotation marks omitted)); *see also In re Moody's*, 599 F. Supp. 2d at 517 ("[P]laintiffs must plead culpable participation with particularity as required by the PSLRA."); *Burstyn v. Worldwide Xceed Grp., Inc.*, No. 01 Civ. 1125, 2002 WL 31191741, at *8 (S.D.N.Y. Sept. 30, 2002) ("[P]laintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." (internal quotation marks omitted)).

Because the Complaint fails to plead even recklessness with the particularity required by the PSLRA as to Defendants Mudd and Saidman in the § 10(b) context, it also necessarily fails to do the same in the § 20(a) context. *See, e.g.*, *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 308 (S.D.N.Y. 2008) (dismissing a § 20(a) claim as to some of the defendants for failure to plead culpable participation, on the ground that the complaint also failed plead scienter under § 10(b) against the same defendants); *In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 494 (S.D.N.Y. 2006) (same); *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041, 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) (same); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. at 222 (same).

**CONCLUSION**

For the foregoing reasons, Defendants Mudd and Saidman's motion to dismiss is GRANTED in its entirety.  The Clerk is directed to close the motion docketed at No. 88 and terminate A. Carl Mudd and Sheldon B. Saidman as parties.

SO ORDERED.

Dated: August 12, 2014
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE